Council, whenever you're ready. For the record, in re Marriage of Evan Cozadd vs. Michelle Cozadd. Council, whenever you're ready, please. May it please the Court. Good morning, Your Honor. Good morning, Council. My name is Colleen Aldis, and I represent the appellant, Evan Cozadd. The appeal derives from the trial court's entry of a judgment of dissolution on November 12, 2015, dividing the marital property and debts, and ordering Evan to pay the applicant, Michelle, $2,000 per month in maintenance for 24 months and contribute to her attorney's fees. The issues raised in this appeal are summarized in several different categories. The first issue, as it relates to maintenance, is Mr. Cozadd's position that the trial court erred when it failed to make specific findings as to his income, identify the reasoning for awarding maintenance with citation to relevant statutory factors, and the court erred in failing to calculate the amount and duration of maintenance pursuant to the guidelines under Section 504, which had been recently amended in January 1st of 2015. The maintenance order states that after application of, or the judgment of dissolution as it relates to maintenance, states as follows. After application of factors and maintenance guidelines, Michelle is awarded her requested maintenance of $2,000 per month, a downward deviation by consent. While the trial court classified the maintenance order as a downward deviation by consent, the record is clear that Evan had repeatedly denied that a maintenance award was appropriate after considering the party's needs, responsibilities, actual incomes, and standards of living. So why do you think it says consent? That I am not sure, Your Honor. To be clear, I believe that the court may have written by consent because that was what Michelle was requesting, and she had requested in her pretrial memorandum that she was entitled to $7,000 per month over a span of 7.4 years, if I am correct. And I believe that potentially the trial court at that time may have put by consent because Michelle was agreeing at the time of the trial court at the final hearing for a downward deviation of $2,000 per month for 24 months. Because what was awarded was exactly what was requested by Michelle's counsel in her closing argument. But it was a downward deviation. I disagree with the classification that it was a downward deviation. According to the mandatory statutory guidelines that had just been enacted in January of 2015, the court would have to make a specific finding as to Evan's income. Even if there's a consent? I'm sorry? Even if there's consent? There was not consent. No, I'm asking just hypothetically. Oh, hypothetically. Okay, thank you, Your Honor. If there was consent, this would have been an agreed judgment, and it wouldn't have been after a final hearing. Under this scenario, in this case, everything was contested. Everything was argued at the final hearing, and there was conflicting evidence as it relates to the party's income, standards of living, reasonable needs, and ability for Evan to pay maintenance. And to go back to your question, Your Honor, as it relates to the downward deviation, the statutory guidelines became similar to child support calculations, whereas the court would have to do a calculation using 30% of Mr. Kozak's gross income minus 20% of Michelle's gross income, and then there was a 40% statutory threshold that would have to be calculated. Now, according to the mandatory guidelines and the statute, according to Section 504, the court was required to not only specify Evan's income but also do that calculation in its order, whether it was in the written order or as part of the oral ruling. And based on our review of the record, neither one was conducted here. And specifically as it relates to Evan's income, Michelle had been married to Evan for 12 years at this time, had filed joint tax returns, and had filed her petition for dissolution in March of 2015. And in her verified petition for dissolution, it states that Evan made $102,000 per year. She did not request maintenance at that time, and similarly, she never went for maintenance until it was the final hearing. And it was based on an erroneous financial affidavit. It was a miscalculation that my client had made as when he was filling out the financial affidavit. He had put on his affidavit that he was making more money than he actually was, and what was shown not only by his testimony at the hearing but also his 2014 W-2s that were attached to the financial affidavit, as well as his earning statements for both of his positions in 2015. Specifically, Evan had made a miscalculation and said that he was making $11,000 a month in salary. And when it was brought up by Michelle's counsel at the final hearing that, you know, that means you were making at least $144,000 a year, Evan said, oh, gosh, no, under no scenario have I ever made that much money. I have no idea how that came up. My earnings are shown as relative to the W-2s and the paystubs that were attached to his financial affidavit. And then the other issue that was raised by Michelle's counsel during the final hearing had to do with the monthly bonus. Mr. Kozak signed his financial affidavit in May of 2015. And at that time, Mr. Kozak had just received a sustained superior performance bonus. And it's something that he had only received two times in his entire career of 26 years within the reserves. And under that, he had received roughly around $1,400. He wrote that down as a bonus because that's what he had just received. He was not aware at that time that that would then show to Michelle and also to the court that he was receiving that on a monthly basis. That was once again dispelled during and explained during the testimony of Mr. Kozak at the final hearing. And it's important to note that the court itself in its ruling specifically noted that there was a mistake made and that Mr. Kozak had reported making a heck of a lot more money than what he had actually been earning. And that's a quote from the court. And the court then went through and tried to decipher how much money it was going to identify and specify for Evan's income. And in it, it identified that it was calculating Evan's income to be $118,000, which included annual child support that the court had calculated of $6,864. And the court then said, so we are just shy of $120,000. And I do find that there were no documents or any explanation as to how these bonuses are calculated. And so even with the bonuses, we are, let's see, $129 shy of the 40%. Are you reading from the hearing? Yes, I am. What's the reference you're reading? The record site is 104-105. And it's also attached to the appendix as well. Ms. Lawless, did your client ever amend his financial disclosure once he indicated to the court that it was way off base? It was only indicated to him when he was testifying at the final hearing. I don't know who his attorney was. Ms. Lawless, was there any supplemental document filed that did accurately state what the income was? I was not the trial counselor, however. In the motion to reconsider, as part of the motion to reconsider, Mr. Kozak's counsel attempted to provide to the court his 2015 W-2s because the hearing was November 12th of 2015, and the hearing on the motion to reconsider was in January of 2016. So at that time the court ruled. The court denied that. No, when did the court rule? The court ruled November 12th of 2015 on the day of the hearing. And so within his counsel at that time had filed a timely motion to reconsider, attempting to identify and clarify to the court that this was a mistake, as the court had noted itself in its own oral ruling was that there was a mistake. Because under the statutory guidelines, and I've tried to provide the scenarios, there are no factual scenarios to support an award of maintenance in any scenario, notwithstanding $2,000 per month for 24 months. Your client suffered a lack of credibility with the trial judge. I would disagree with that. The court specifically noted that he was credible, and that there was just not enough documentation as it relates to the bonuses. And I do believe that the court had narrowed it to that situation, was as it relates to when the bonuses were calculated and how they were calculated. And I think the court has the obligation to specify, and to specify what Mr. Kozak's income was at the time of determining whether maintenance was required. This court in 1990, in the marriage of Douglas, reversed the trial court's order awarding maintenance and child support because there was no specific finding as to the husband's income or potential income. And the court in Douglas held that without a specific finding as to the party's income, the statutory factors relating to child support and the maintenance could not have been properly considered. The court noted that even though there's testimony by each of the parties as to their income and earning capacity, the trial court failed to identify the income values that it utilized in making its final judgment. And I do think that that is relevant under this scenario. In the fourth district, in the marriage of Uphoff, it was a similar situation. The trial court had awarded maintenance, child support, and distributed the marital property based on the finding that the husband's income was somewhere between $13,000 to $48,000. Could you tell me the appendix pages that you were reading from? Because I apologize, but I can't find them. That's okay. I apologize. I was reading actually from my brief, so. That's what I'm asking is your brief. Where are you reading from? Page 12 of the statement of facts. Oh, I'm asking about the transcript that you're reading from. It's not in the appendix, is it? I apologize. I thought that I had included it. Instead, I just included the entire briefing. Okay. I just wanted to make sure my brief was the same as yours. No, that was my mistake, Your Honor. Thank you for bringing that to my attention. It's enough. And so as it relates to the specific findings of the husband's income, the documentation that was submitted and Mr. Kozad's testimony states that he had made $112,000 in 2015, and if the court were to add the $6,600 of child support that he had been receiving prior to the final hearing, then his income would have been $118,000. At the time of the final hearing, Ms. Kozad was making $80,000, and the factual scenarios in which I outlined in the brief identified that under either scenario of making $118,000 or making upwards to $126,000, which would be the highest that it would be under the court's ruling, even though they didn't identify a specific income level, the 40% threshold under Section 504 precludes that there would be any award of maintenance at the level that we are at here, especially to sustain an argument that it was a downward deviation. You allege, as a part of your argument, that the trial court failed to comply with the statute. Yes, Your Honor. So, if the trial court failed to comply with the statute, that's de novo review, correct? Yes. And if we find that the trial court failed to comply with the statute by its failure to enunciate the factors, would we ever get into all of this review of the argument and the financial, or are you really asking us to remand this case? What relief do you want from us? And as it relates to, and you are absolutely correct, and I did start the brief and this argument trying to identify that there was a failure by the trial court to adhere to the statute as it relates to specific findings, and you are correct that that would be de novo and it would then remand back. As part of the other arguments in the case, that if the court found that that was not correct, that even assuming the court found that in this case, there were other reasons and other issues that would require a remand back to the trial court as it relates to the attorney's fees as well as the property distribution, and finally, the failure for the trial court to provide any non-marital and marital portions of the pensions. The parties had significant pensions in this case, and they were not valued at the time of the divorce. And so at the time of the final hearing, the largest assets that the parties owned were not valued, and how could the court have properly allocated and utilized the factors in the property distribution as well as the maintenance guidelines? But to circle back to your question, you are correct that if the court, it is our position that court failed as it relates to several different aspects of the maintenance. Well, before you get into that, to what extent does a consent for a downward deviation initiate, preclude the need for specific findings on the factors of maintenance? You know, the issue of consent, other than the one word that was written by the trial court in the judgment of dissolution. It's a pretty important one word. It has a legal meaning. No, and I absolutely agree, Your Honor. The issue that I'm having is it should not have been placed in there to begin with, which was an issue that was brought to the attention of the trial court in the motion to reconsider. There was no consent. The only issue that was consented to was the respondent, or the petitioner in this case, Michelle, said, yes, I will take $2,000 per month for 24 months. And under that scenario is where I believe, and I don't know because it's not off record, that I believe the trial court put consent is that Michelle was consenting to a downward deviation. Evan's argument from the outset, as well as through today, with proper timely objections to all of it, was that there would not have been a downward deviation or even an award of maintenance under Section 504. So I do believe that the words, by consent, do have a legal meaning. These have been objected to from the outset, and then I just think they were improperly placed in the order. So, just to follow up on that, in your motion to reconsider, then, you argued that consent was not appropriate, that your client did not consent to their being proven, I guess, or shown a downward deviation. Yes. And I was, once again, not the counsel that wrote that motion to reconsider. That's fine. But my question is, was that argued? Yes, it was argued. That there would not have been a downward deviation, and the court was improperly calculated that, and that there should not have been maintenance from the outset. That's the key for me, Justice Chapman, is, did he claim there should not have been maintenance from the outset? Yes. I didn't mean to interrupt you. No, that's it. That was my question, too. Yes, he did claim that from the outset. Did you have a follow-up, Justice Chapman? No. So, throughout the proceedings, we're going to see, in the review of the record, that your client continuously objected, and it was through the argument of Wife's counsel that Wife said, well, I'll take less. Yes. It's my understanding the pretrial memorandum that was filed by Mr. Kozak's counsel at that time identified that the maintenance calculations would not have awarded maintenance based on the parties' incomes. Thank you, counsel. Thank you. Counsel? Thank you. Spend just a few moments clarifying what actually happened at the trial court level. First of all, there was- You can take a minute to get organized. Thank you. There was never a concession by myself and my client that there was no basis for maintenance to be awarded under the guidelines. That never happened. What did happen was, after the court did its calculations and determined that there was a proper basis for maintenance under the guidelines, my client, as she had always maintained with me, was not wanting anything more than what we used to call some rehabilitative maintenance for a short duration. And a lot of her concern was based on the fact that she knew that Mr. Kozak had two children that he was trying to help raise, and she did not want to harm him financially. So she agreed that in spite of the fact that under the guidelines she was entitled to 3.2- It was a 12-year marriage. She was entitled to 3.2 years of maintenance that she would accept only two years in lieu of the 3.2. But I want to get back to the statement. Well, first of all, I have another correction to make. The section of the transcript regarding the court's calculations when it determined that maintenance could be awarded under the guidelines was misquoted to you. It was read to you or indicated to you that the court found that his income was just shy of $120,000 with the bonuses. That was not what the court found. The court determined, and so even without the bonuses, we are, let's see, $129 shy of the 40%. So that was without figuring in the bonuses. And his testimony at trial was, well, I'm not sure about these bonuses or when I get them. That was not the only credibility issue going with Mr. Kozak, however. And Mr. Kozak shows up to trial with a financial statement that was prepared in May of 2015. The trial occurred in November of 2015. His financial statement was void of any mention of the child support he was receiving. That is income to him under the maintenance and child support statute. So in addition to all of his income, he was receiving $287 every two weeks, which is $5.46 a month in child support. It was not reported on his financial statement. And as far as his claim that his financial statement grossly overinflated, by the way, his sworn financial statement grossly overinflated his income, it did not. I did the calculations. He sufficiently confused the court, who was out there trying to do calculations while she was hearing evidence. I did the calculations, and I determined his income to be $136,000 a year. So all of his statements at trial that were unsubstantiated by documentation were self-serving. For example, he tries to claim that he stopped receiving the child support for his one minor daughter a month before trial. And guess what? He has no documentation. There's been no order entered stopping the child support. So he shows up at a motion to reconsider with a motion filed by his ex-wife to terminate child support payments. No order was entered, but he showed up with that and tried to enter it. Most of his evidence he tried to get in after trial on a motion to reconsider. And all of that evidence was available to him in time of trial, and we all know the law on that. So he failed in that regard. Judge Gomery did the fairest and most equitable thing that she could. She applied the factors. If you read her ruling, and I direct the court to read the record from page 104, and I request that the court not direct the court, from page 104 through 109, because she did an extensive ruling from the bench. She did the calculations to the best of her ability on the spot. She came up with what allowed her to consider the guidelines in awarding maintenance. However, it's my position that whether she used the guidelines or not, she had, under this new maintenance statute, the ability to go under B-2 and avoid the guideline application whatsoever and simply consider the factors and, in applying the factors, award maintenance, which is what she did. I'm sorry to interrupt, but so I have not read that portion of the transcript. My question is this. Did Judge Gomery orally give you and opposing counsel her calculations? In other words, she was making a ruling before this written order. And when did your client say, well, I'll accept less? I mean, had the judge already told her she was entitled to the 3.2 years? My client said that she would accept less when she testified, and I argued that. So before the ruling. Before the ruling came by the judge. That's correct. So one of the concerns that's arisen, and this is a personal viewpoint, is that the courts are not taking the time, not just in marital cases, but in some other cases, to put in writing what they're saying in the court. And I'm wondering, in my own mind, under this section of the statute, where it says that any non-guidelines award of maintenance shall be made after the court's consideration of all relevant factors. But then it goes on with a special section to say that if the court deviates, it has to give its reasoning. So we have it in writing, or we have it in oral form in a record, but we don't have it in a court order for future judges should this become a problem. And I'm wondering what you think about that. I mean, with this new statute, should we allow courts to enter the kind of order that Judge Gomrig entered, or should we require them to put into writing what they say to the litigants? Well, I know I've put you on the spot. No, and I understand, but I guess my position is this. With the transcript that we have in this case, Judge Gomrig specifically states that she is awarding the maintenance based on the factor within the maintenance statute that says, and it's the overriding factor according to the case law, that she wants to put Ms. Kozak in a position to assimilate somewhat the standard of living that she had prior to the breakup of the marriage. Now, she did not handwrite that herself or type it herself, but because she recited it into the record, I have it here in front of me in written form. So what she took was that factor, which I believe was the only applicable factor other than the age and health and those types of things, but the overriding factor that she applied out of the statute was to get her back to what she knew before the marriage. But she didn't state, well, and maybe this is one of the issues, the statute says that the court shall state in its findings the amount of maintenance or duration that would have been required. So maybe what you're, maybe, maybe, I don't know, when we interpret the words, the court shall state in its findings, is that a finding that you're reading from or is this court order its findings? It doesn't say it has to state in a court order, but how are courts in the future to know? I have another query, and we are kind of on new territory. I know. We haven't thought of a lot of history in this new statute. Does the by-consent obviate those findings if it benefits, if it is in fact a downward deviation and benefits the person who would be paying more? So does that obviate any specific findings? In other words, if it had, if it had been, the deviations are generally greater. Right. And so if it had been a greater deviation, there may have been then a requirement that those findings be specifically stated. But if the party who's losing that benefit agrees to it, is it necessary? Right. I'd like to hear your comments on that. Well, and that truly was my approach to this. I will be frank with you. I was a little shocked that this was one of the issues on appeal because I thought, well, you know, here we had a potential to ask for the guideline amount and duration. We did not. And I know because Judge Gottfried mentions that she's only seeking two years, and she mentions it in a way that it's like, well, here we're only asking for two years, and that's fair under the circumstances, that that probably, you know, suggested to her, why do I need to go through each of these factors if she's willing to accept less than the guidelines would have me afford? The order to the court, Kendra. Yes. When Judge Gomrich made her comments from the bench, it was in the form of a ruling. Yes. The written order, which does mention consent, basically ratifies it for the record, but they're both on the record. So is it your position that the written order incorporates by subselenial reference the ruling from the bench? Absolutely. And to what extent? The guidelines are pretty clear in the statute, so, you know, we're in the process of trying to make some precedent as to how it's done. Right. I know. But it's to the extent, and we've been here before in 1979 when I was trying these cases, and it's an interesting experience, to what extent does consent initiate the requirement to specifically go through each and every or the majority of the guideline positions? And I know. And the other, I can't put myself in Judge Gomrich's place, of course, but I can understand when you're trying to get through a trial and you glance down at these factors and you can see that none of these need to be discussed because they go without mention. I mean, they're not worth mentioning given the facts of a particular case. So when you get down to one that you know is applicable, you mention that factor and you apply the facts and you comment and you basically say, well, this fits and maintenance should or should not be awarded. I don't know if I guess what we're all trying to figure out here is must the judge go through each factor and apply the facts and take that time? And as you know, judges would visit schedules, and sometimes that becomes quite difficult. However, my position is that Judge Gomrich took the factor, the overriding factor, under the statute and applied it, and I think that she had every right to do that. Whether she needed to go into the other factors such as contribution made during his career, those types of things, I guess she could have, but it wasn't going to be any of the basis for approving. To what extent? I'm sorry. I just want to ask one quick question. Did she make the finding of the 3.2 years, or did she make any finding that your client was entitled to more than two years? She doesn't come right out and say it, but she indicates by implication. Oh, and she does so in the attorney's fees section of her ruling. Given the downward departure with regard to the attorney's fees, given the downward departure with regard to maintenance that Ms. Cosette has suggested, and I have ordered Mr. Cosette to pay half of the remaining balance of Ms. Fiske's attorney's fees, which, by the way, was about $3,500. It wasn't like it was. To what extent does the trial court's apparent assessment of lack of credibility affect the admonition, the direction to go through specific facts? The judge even commented that that was certainly something that she considered. It was like, because I found his credibility to be an issue, if I'm going to do anything one way or the other, it's going to be on the side of what I know probably was true, rather than what Ms. Cosette stated in his testimony, because he made some incredible statements during the trial, one of which was, I have a GI bill available to help pay for my older daughter's college education. However, I've chosen not to use that, and I don't keep exact records about anything I've spent. Then later, under direct examination by his own counsel, all of a sudden he comes up with numbers that he supposedly sent without my understanding. Didn't he indicate he was trying to split up the GI factors with the two kids? He did. He did. And also, in one paragraph, he said that his daughter had a full scholarship, so I don't know what you can believe. And I guess the worst part was he walks in with a sworn financial statement, submits it, and then tries to retract all of the information as to his income. May I say one other thing, because I ran out of time, and I haven't addressed the property division. Counsel has submitted, in our brief, the case of Wilson v. Wilson, for the proposition that there was not adequate evaluation of assets for the court to be able to make proper or to apply the factors on the maintenance issue. This is not the Wilson case. That involved evaluation of a business interest. We don't have anything like that here where there's an unknown entity. Everything was an account of the value, and Judge Gowrig knew what they were from the financial statements and knew they were all subject to division, ordered them to be divided, half and half of the marital portion for each. She knew what a party was going to have at the end of the day when she considered the maintenance issue. So that is no basis for reversal of anything. Thank you, Counsel. May I just say one other thing? Ms. Smith, do you believe, and I will give you additional time, don't worry about that. Do you think that the bar bears any responsibility under this new statute for helping the courts now to write orders that are more in conformity with these requirements, which may be weighty? Do you think that maybe the bar that you practice a lot in could be helpful to the courts in the future? Absolutely. And quite frankly, this appeal was taken based on a written order. Typically, we go forward and draft what's called a formal order, as you know, which would have been much more detailed based upon the court's actual ruling from the bench. And in my handwritten order, which I wrote, I indicate that the court considered all of the factors under the maintenance statute in making the ruling. So I typically, when I handwrite an order, I know I'm going to do a more detailed order at the end. So I put in there the factors that have been considered. But then it would have been a more detailed analysis of the standards of living as it came from the judge that day. So had you written the formal order to follow, it would have probably been a little easier for us here. It would have. But, Your Honor, I will tell you this. I will not walk away from another hearing with a handwritten order that does anything less than address every factor. Because, you know, why even create an issue if there doesn't have to be one? And I think certainly, yeah, it could be interpreted either way in some of these cases that perhaps early sign of detail. Well, perhaps you can spread the word. I will. I'd be happy to. Thank you. Thank you. Thank you, Counsel. And again, I apologize. I hope you told her this morning you were on your way to court. I'm sorry. Well, the best part was after I got pulled over by the police, I got to Ashley and the train was there. I probably would have made it except for the five minutes I sat behind the train. It was one of those days. Thank you. Counsel, we'll be happy to give you extra time also for rebuttal. Thank you, Your Honor. I talk fast too, so. Okay. You do. I do. I apologize. Are you from the East Coast or what? I'm from Chicagoland area. Okay. I know. Don't hold it against me. We don't do that. I'm just kidding. Okay. So I would like to start by identifying that the position statement I have checked in the record did state that the guidelines would not have, any calculation of the guidelines would not have supported a maintenance calculation and that it should have been denied. And I also want to circle back to by consent. It has not just been stated by Ms. Pitts that she is the one that drafted this order. It is not signed by Ms. Wirth. If you've looked at it, it shows Ms. Pitts' signature and then Judge Gomerick's signature. And then I do believe that has something to do with the term by consent. I do believe consent requires both parties to have agreed to it. And under no scenario in the record will it show that Mr. Koza had agreed to any application of the guidelines that would support maintenance or a downward deviation that is required. The consent comment in the order was clearly aimed at what Ms. Pitts' client consented to. And so I'm not quite sure what the basis of your position is that your client would have to also consent. And obviously, you know, whatever his position and whatever the success of his position as to whether maintenance was appropriate to begin with, if the other side is agreeing to go downward on the value, he's going to keep his mouth shut and say yes. You know, I mean, I don't see the basis of that argument. Well, and this is the first time I've heard the argument about by consent. It is not any indication of anything being discussed of by consent. It was not brought up by Michelle in the response to Motion to Reconsider or the brief. But when I was, and I may have articulated it improperly, was that the by consent would have had to assume that the calculation of maintenance was done properly to begin with. And that this amount was less than what should have been calculated or was calculated. Exactly. And your position is that all of that was wrong. So regardless of what she personally consented to, the consent doesn't go to your client. I understand that. And that's what my argument is, that the consent doesn't really affect. I don't think that was as clear before, but I think we understand now. Thank you. I want to ask you a question, the same question I asked Ms. Viss, and that is, or Mrs. Viss. And that is, we have a statute that says the court shall state in its findings the amount of maintenance or duration that would have been required under the guidelines. Is there any place in the record where the court stated its findings? There is only one indication, and I wanted to look back, and it's page 17 of my brief. I put the complete oral ruling related to maintenance. I want the record site, if you can. And the record site, I apologize, is R103 to 105. So it's within the range that Ms. Viss gave us. Yes. I mean, she was 104 to 109. So 103 to 109, we're going to get that. Yes. And it specifically states that that raises the issue of whether you've established you need maintenance. And I believe that you have. You are living in an apartment and have testified you wish to purchase a home. I believe that under the guidelines, your stipulation or assertion that you wish far below the statutory guidelines of $2,000 a month for two years is fair and reasonable, and that would be my order. That is the only indication as it relates to factors that were utilized by the court. But I do think it's important to note that despite even that indication about potentially a standard of living, that the court was still required under the statute, when it's using the word shall, the courts have interpreted shall under the Illinois Marriage and Dissolution of Marriage Act to be mandatory. And these are, while it is true these are new as it relates to maintenance, the courts have understood specific findings and the use of the term shall in child support calculations. It's almost identical language as it relates to the requirements for trial courts to provide specific findings and calculate net income for a payor of child support. And so the court in this case, I believe, simply did not follow the guidelines and did not adhere to requiring a specified finding as relates to Evan's income, or calculate what the amount of maintenance would have been under the guidelines and the duration. And that is required. It's an absolute mandatory requirement under Section 504. And the court's inability to do that requires a reversal. That is reversible error. It has been ruled as such as relates to child support calculations. And as I mentioned before, the court in Douglas, in this court in 1990, as well as the marriage of Uphoff in the Fourth District. If I may extend my argument a couple more minutes. And the word shall requires mandatory, and that's under the 1999 case marriage of Takata that I have identified in the brief. And there was an idea about his credibility. And the court specifically stated that although I found Mr. Cosette's testimony to be credible in most regards, I think that the lack of financial statements with regards to some of these issues leads the court to extrapolate the numbers in this way. And that was directly after the court started talking about bonuses. And everything else, the court was able to decipher from the W-2s that were attached to his financial affidavit, as well as his testimony stating these are my earnings statements, which lined up five, seven of his earnings statements identified what his annual salary was at that time. And it's consistent with his testimony that he received a $4,000 raise from the year before. And the court had the opportunity to reconsider its rulings. It had an opportunity to reconsider the written judgment that was done by Michelle's counsel in terms of the motion to reconsider. It had evidence that in front of it that was going to show exactly what the income for 2015 was going to be. And it refused to accept that, and I find that that needs to be aired. That trial court indicated that on those specific issues, there was a lack of credibility. That's the basis for which it did not get reconsidered. Well, and when I said the lack of credibility, that was from the final hearing at the trial, and it was talking about the bonus issues because there were documents to support and identify exactly what he made. You know, clients, when they are not familiar with filling out the financial disclosure statement, which can be very confusing, he identified and testified exactly to why he did it the way he did and the mistakes that he made. And the court has an obligation to review those documents, even if it felt that he wasn't credible, which I disagree with that assessment here. There's nothing in the record that I've seen in the briefs that indicates that the court did not review these records. The court basically extended its determination of lack of credibility to its assessment of those records in the context in which they were provided. And that is a function, and that is an allowable determination by a circuit court who's deciding these cases. And I do believe that you are correct that the trial court, and I agree with you, the trial court has the discretion to take into credibility, but they cannot fail to identify what the income actually was, what the court actually determined to be Evan's income and how. The court did not identify his income and actually was saying it was, well, as soon as it got to the 40 percent, the court assumed and stated that, so according to the numbers, militants can apply. And that was after she added in an unspeculative amount of $1,000 bonuses each year. And I would direct, and the final thing is I would direct your attention to the scenarios that I outlined in the brief to show that even if you took into consideration the amount of bonuses that the court was talking about, which never really identified, it would still not support a maintenance duration at the amount that it was in this case. And I do believe the court's failure to identify the income and adhere to the statutory guidelines of mandatory findings as well as calculations, that that requires reversal in this case. Thank you very much. Thank you, counsel. We appreciate the brief and arguments, extended arguments, I suppose, from counsel. We will take the case under advisement. We're going to take a short recess. The next case for…